appeal. The allegations included in the proposed amended complaint, he claims, are allegations of matters which were admitted in proof upon both trials heretofore without objection upon the part of the defendant. For this reason he claims the right to have the complaint so amended without paying the costs of the former appeal. The defendant insists, that under these allegations, proof can be admitted of the injury to the sexual organs, and that such proof must inevitably come out upon the trial, and that, therefore, this complaint should not be thus amended without imposing as a condition the payment of the costs of the appeal.

I am very doubtful whether the plaintiff, under the allegations of the proposed amended complaint, would have the right to show any injury to the sexual organs. Upon the former trial, however, the defendant was not bound to object to evidence of special injury, after having his exception to the ruling of the court admitting evidence as to the injury to the sexual organs; and the mere fact that he did not so object is not proof of his intention to waive the inadmissibility of the evidence under the former complaint. It simply shows the acceptance by him of the ruling of the court, and the forbearance to make unnecessary objections, which, under the ruling of the court, must necessarily be overruled. I am satisfied, therefore, that this amendment should not be allowed except upon payment of costs of the appeal. In the affidavit opposing this motion, the defendant does not ask the actual payment of those costs as a condition of this amendment. The defendant only asks that plaintiff be charged, as a condition of the amendment, with such costs to be offset against any recovery that shall be had herein. The Special Term denied the plaintiff any relief. This I think was wrong, and the plaintiff should be allowed to amend his complaint upon filing a stipulation that from the final recovery herein, if one should be had, defendants may deduct their costs of the last appeal. The order should therefore be reversed, and plaintiff's motion granted upon the terms indicated. No costs to either party. All concur, except PARKER, P. J., who dissents.

(80 App. Div. 508.)

BROOKLYN HILLS IMP. CO. v. NEW YORK & R. B. RY. CO.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1 RAILROADS—CONTRACT TO ERECT STATION—BREACH—MEASURE OF DAMAGE.
In an action by an owner of real estate against a railroad company for breach of an agreement to build a station on plaintiff's land, the measure of damage is the difference between what the land would have been worth if the station had been built and what it was worth without the station.

2. SAME—NOMINAL DAMAGES—ADEQUACY.
A railroad company contracted to erect a station on certain suburban land owned by plaintiff, and to stop trains thereat. On trial of an action for breach of the contract it appeared that there already was a station as close to the main subdivision of plaintiff's land as the contemplated station would have been. There was evidence that defendant erected platforms, and for a time stopped trains, where the station was to have been erected, but that the traffic was not sufficient to justify it. Land which would have been especially benefited by the station was but slightly im-

proved, and no steps had been taken, since the contract was made, to lay it out for residence purposes. Plaintiff's experts testified that the land had been damaged, to the extent of $100,000 while defendant's experts testified that it was not damaged at all. *Held*, that a verdict for nominal damages would not be set aside as inadequate.

Appeal from Special Term, Queens County.

Action by Brooklyn Hills Improvement Company against the New York & Rockaway Beach Railway Company. From a verdict for plaintiff for nominal damages, it appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

John H. Corwin, for appellant.
William J. Kelly, for respondent.

HOOKER, J. In February, 1892, plaintiff was the owner of 170 acres of land adjacent to the defendant's railroad. On the 6th day of February of that year the parties entered into a contract by the terms of which, upon an adequate consideration, the defendant agreed to establish a railroad station on the property of the plaintiff, 28 feet distant from its track, to stop at such station all of its Rockaway Beach trains, and to give particular attention to trains west-bound into Brooklyn between 6 and 9 o'clock in the morning, and east-bound out of Brooklyn between 5 and 7 o'clock in the afternoon, for the accommodation of business during the morning and evening. The defendant further agreed, in constructing such station, to make provision to furnish the plaintiff desk room, free of rent, for the purpose of carrying on a real estate business, and the making of sales of land adjacent to such station; that such rent should be free for not longer than seven years. It also agreed to complete all the terms of the contract within one year from its date.

The consideration moving to the defendant was permission to remove from plaintiff's land about 200,000 cubic yards of gravel for filling in a trestle on defendant's railway adjoining the plaintiff's property on the east. Defendant took the gravel and filled in the trestle, but has never built the station as provided in the contract. Some three years after the contract was executed, near the site determined upon for the station, the defendant built two platforms, one for east-bound, and the other for west-bound, traffic. In the summer of 1894 it commenced stopping trains at these platforms on signal. The plaintiff's land was divided into three general blocks, that between Jamaica and Atlantic avenues having been laid out and largely sold at the time of the execution of the contract. This section of the plaintiff's property was adjacent to the Woodhaven Junction station of defendant's railroad, and was very generally built up, and the residents of this section used that station in traveling back and forth from the city of New York. The easterly section from Magnolia avenue across Myrtle avenue, and thence easterly, contained about 90 acres of land, and in the year 1895 was sold to the county of Kings as part of "Forest Park." The plaintiff received for that tract of land from the county $219,630. The balance of the land between Magnolia and Jamaica avenues contained

about 40 acres, and was approximately midway between Wood-haven Junction station and the site upon which the station provided for in the contract was to be built. Numerous witnesses were called to prove the probable increase in value of the plaintiff's lands, had the terms of the contract in relation to building the station and stopping trains been carried out. It appears that none of the lots between Jamaica and Magnolia avenues was sold after the contract was entered into, and it does not appear what effort, if any, was made by the plaintiff, through any channel, after that time, to dispose of any of the property save that portion thereof which was sold to the county of Kings for park purposes. This action was brought to recover damages for breach by defendant of the contract to which reference has been made, by which the defendant agreed to build and establish a suitable passenger station on plaintiff's suburban land, stop trains thereat, and furnish plaintiff with free desk room therein for a period of seven years for the purpose of carrying on the sale of its lots.

The court charged the jury in part as follows:

"The plaintiff says that because the defendant company did not put up this station it was damaged to the extent of the difference between what the land would have been worth if the station had been put there, and what it was worth without the station."

No exception was taken to that portion of the charge, and it is not urged that the rule was incorrectly stated. We are of opinion that the learned trial court adopted the true measure of damages. Watterson v. Allegheny Valley R. R. Co., 74 Pa. 208; Louisville, New Albany, etc., R. R. Co. v. Sumner, 106 Ind. 55, 5 N. E. 404, 55 Am. Rep. 719.

The court, in reference to the evidence of expert witnesses, charged the jury:

"The law permits a man who has special knowledge and special skill and experience to tell men who have not that knowledge, skill, and experience about things of which he has the superior and peculiar knowledge. * * * So, too, in cases of this kind, the law permits men who have the kind of experience to which I have referred to give their opinions, based upon experience, as to what the value of this land would be. Of course, those are what I say—opinions. You are not bound absolutely by any witness' opinion or judgment. The judgment and opinion of a witness is simply introduced in the case as a guide to aid you in arriving at an honest and intelligent result. * * * The plaintiff says that by the testimony of these gentlemen whom they have called as witnesses, and whom they say are experienced within the description I have given you, they have proven that this property would have been worth from $100,000 to $200,000 more if the station had been established, and they say that is the amount and the measure of their damage. In passing, let me say that, though the amounts spoken of by counsel are large, still the rule of law is the same in this as in a little case, and the question is just as simple. The answer made by the defendant is that conceding, they say, we made this contract, the plaintiff has not been damaged at all; and they call first as witnesses their servants, to say that in 1894 they did make a platform at the place where the contract said it should be made for people to step off the trains and land at this place. They did not cover it over by a suitable station building, but they say that in a little over a year, in the summer of 1894, they made a platform at this place, stopped several trains there, and the people who wanted to get on or off were so few that it seemed a needless and useless work, and they did not stop trains at all, ex-

cept people notified them that they wanted to get on or off, and made it what is known as a 'flag station'; that while they did this the fewness of the people was so marked, and the houses in the neighborhood were so remote, that the stopping of trains there was evidently a useless work, and that the erection of a station to be used in co-operation with the platform was of no substantial benefit, because there were no people there to cover, no people there to invite, and no people to protect. The answer the plaintiff makes to that is that a suitable and attractive station with all trains stopping there would attract people to that place, and that one of the objects in insisting on the erection of a station was not, of course, to protect people who were not there, and not to land people who then had no homes there, but to create an inquiry and a condition that would require the protection of people by 'a station."

The jury rendered a verdict for the plaintiff for the sum of six cents, and plaintiff's motion for a new trial was denied. Plaintiff insists that the verdict was inadequate, and that a reversal should be directed for that reason.

Photographs were introduced in evidence, and show that the plaintiff's property between Jamaica and Magnolia avenues is hilly and wooded. It does not appear that since the making of the contract any steps have been taken by the plaintiff to clear it or to lay it out in such a manner as would be necessary in case buildings were to be erected for residential purposes. The only improvement upon that tract was the laying out and curbing of a street running from Jamaica avenue to Magnolia avenue, but this was done prior to the contract. The defendant's experts testified that the establishment of a station would have no effect on the value of that woodland unless the owners improved it, laid out streets, and made roads upon it. As to the station and desk room therein, it appears that the land on which the building was to be erected was sold by plaintiff to the county of Kings in 1895. This is a circumstance for the jury. We think that the charge of the learned court was exceedingly fair, and upon the questions of law and the theories of the parties so clearly advised the jury that their verdict cannot, as urged by appellant, be deemed to have been the result of prejudice, passion, or misapprehension. They were the judges of value; and in the light of all the surrounding circumstances, and taking into consideration the purposes which the station, the stoppage of trains, and the desk space were to serve, and the uses to which the premises were actually put after the contract was made, and the conduct of the plaintiff since that time, they were justified in finding a verdict of nominal damages. The exceptions to the rulings of the learned trial court on questions of admissibility of evidence have been examined, and they present no error.

The judgment and order should be affirmed, with costs. All concur.